NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
RUTH C. PINKEL (Cal. Bar No. 164470)
Assistant United States Attorney
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6077
     Facsimile: (213) 894-7631
     E-mail:    ruth.pinkel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-00754-RGK |
|---|---|
| Plaintiff, | GOVERNMENT'S OBJECTION TO PRESENTENCE REPORT AND GOVERNMENT'S SENTENCING POSITION |
| v. | |
| DAVID RICHARD SCOTT, | Hearing Date: August 20, 2018 |
| Defendant. | Hearing Time: 1:30 p.m. Location:   Courtroom of the Hon. R. Gary Klausner |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Ruth C. Pinkel, hereby files its objection to presentence report and sentencing position for defendant David Richard Scott aka Richard Scott.

This objection and sentencing position is based upon the attached memorandum of points and authorities, the files and records

//

in this case, and such further evidence and argument as the Court may permit.

Dated: July 25, 2018                    Respectfully submitted,

                                        NICOLA T. HANNA
                                        United States Attorney

                                        LAWRENCE S. MIDDLETON
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                              /s/*RUTH C. PINKEL*
                                        RUTH C. PINKEL
                                        Assistant United States Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

For over fourteen years, while operating parking lots at the Department of Veterans' Affairs ("VA") West Los Angeles campus, defendant Richard Scott ("defendant") used his position to bribe a public official into looking the other way while defendant defrauded the VA out of over $13 million in parking revenue.

A lengthy criminal investigation by the VA-Office of Inspector General, the Federal Bureau of Investigation, and the Internal Revenue Service-Criminal Investigation resulted in defendant's arrest on November 8, 2017 on a single-count criminal complaint.  On December 7, 2017, defendant was charged in a fifteen-count indictment with Conspiracy to Commit Bribery and Major Fraud Against the United States (18 U.S.C. § 371), Major Fraud Against the United States (18 U.S.C. § 1031), Wire Fraud (18 U.S.C. § 1343), Interstate Transportation of Property Obtained by Fraud (18 U.S.C. § 2314) and Criminal Forfeiture Allegations.

Defendant pled guilty on May 17, 2018, pursuant to a binding plea agreement under Fed R. Crim. P. 11(c)(1)(C).  Pursuant to paragraph 22 of the plea agreement, defendant and the government agreed that, "taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7) and the relevant sentencing guideline factors set forth [in the plea agreement], an appropriate disposition of this case is that the court impose a sentence of: 70 months' imprisonment; 3 years' supervised release with financial and employment conditions to be fixed by the Court; $10,000 fine; $200 special assessment; and $12,619,693.00 restitution."

The United States Probation Office ("USPO") issued its Presentence Report ("PSR") for defendant on July 11, 2018. In the PSR, the Probation Officer calculated a base offense level of 12, and a twenty-two-level increase for more than one bribe and the loss of $13 million, for an adjusted offense level of 34, and determined that defendant falls within Criminal History Category I. Based on a total offense level of 31, after acceptance of responsibility, and a Criminal History category of I, the Probation Officer determined that the applicable Guidelines range is 108-135 months' incarceration. The Probation Officer's sentencing recommendation is confidential.

The government objects to the guidelines calculations in the PSR, which are technically correct under the bribery guidelines (USSG § 2C1.1), but not consistent with the fraud guidelines calculations (USSG § 2B1.1) and 70-month sentence agreed upon in paragraphs 20 and 22 of the plea agreement.[1] The government stands by its agreement to recommend a 70-month sentence in this case. For the reasons set forth below in Section III, the government further objects to PSR paragraphs 15, 26, 65-67, 79 and 84, which relate to two factual errors, alleged substance abuse, and the imposition of a $10,000 fine.

Given the severity of defendant's conduct in this case, and as agreed by the parties in the binding plea agreement, a sentence of 70 months' imprisonment, three years' supervised release, a $200 special assessment, restitution of $12,619,693 for the remaining loss to the

---

[1] PSR ¶ 32 discusses the difference between the two guideline provisions. Plea Agreement ¶ 33 allows the parties to "submit full and complete factual information to [the Court], even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in" the Plea Agreement.

2

VA, and a fine of $10,000 is warranted in this case and should be imposed in the Court's discretion.

## II. STATEMENT OF FACTS

Defendant engaged in an extensive and lucrative $13+ million conspiracy to bribe a government official and defraud the VA for fourteen years.

In 1999, defendant obtained a contract to provide parking services at the VA and in 2003, he began bribing the contracting official, Ralph Tillman, and continued to bribe Tillman throughout the entirety of the contract, including a bribe to extend the contract from 2011 to 2022.  (PSR ¶¶ 12, 14-17.)

Defendant provided Tillman with cash and other items of value in return for his aid in the commission, allowance, and concealment of fraud upon the VA and his making of opportunity to commit a fraud against the VA that benefitted defendant and his company, Westside Services ("WSS").  (PSR ¶ 14.)  Defendant underreported revenue and inflated expenses.  (PSR ¶ 19.)  Defendant personally collected VA cash receipts to pay bribes to Tillman and for other personal expenses, and his employees were instructed to make deliveries of cash receipts to defendant's house.  Defendant kept and maintained these cash receipts in his home in order to underreport WSS revenue. (PSR ¶ 19.)

With respect to expenses, defendant often marked them up by 600% when reporting them to the VA.  Other times, he billed the outside companies using the parking lots for the cost of parking lot repair/maintenance, but still deducted the expenses from the VA's share in settlement statements.  Scott claimed to have provided a total of $11.6 million of in-kind services to the VA.  According to

3

records maintained by his bookkeeper, defendant only expended $1.4 million in expenses for paving companies, electrical companies, construction, fencing and an architect, despite representing to the VA costs of approximate $5.97 million. (PSR ¶ 20.)

Not surprisingly, almost ten years passed in between defendant's payments to the VA. (PSR ¶ 16.)

Defendant maintained at least two separate sets of financial records to further his fraud scheme. The first set, in the form of settlement statements, was maintained by defendant and submitted to the VA containing false information regarding revenue and expenses. The second, prepared by his bookkeeper, based on WSS bank records, contained actual expenditure, but not all VA cash receipts. Defendant purposely did not use his bookkeeper to prepare the settlement statements, and did not show the settlement statements to the bookkeeper because defendant knew the settlement statements were false and were not based upon his actual revenue and expenses. (PSR ¶ 21.)

Defendant used proceeds of the fraud scheme to purchase, and make payments on, a house on Pacific Coast Highway in Malibu, California, three luxury condominiums in Santa Monica, California, a Cigarette racing boat, multiple rare luxury vehicles, including three Ferraris, three Corvettes, a Ford Shelby Super Snake, Mercedes Benzes, and other personal expenses. (PSR ¶ 23.) Defendant's personal expenses, travel, meals, entertainment and owner's draws totaled at least $13.9 million. (PSR ¶ 22.) When defendant's house was searched in November 2017, he possessed $155,280 in cash in his bedroom; $23,950 in cash in a bag in his office (along with his

passport), and an additional $34,494 in cash in another location in the office. (Id. ¶ 23.)

As part of his plea agreement (Plea Agreement ¶ 5b), defendant agreed to forfeit the above-described assets, numerous bank accounts, and three luxury condominiums in Santa Monica.

### Co-Conspirator's Guilty Plea and Sentencing

On January 12, 2018 a plea agreement and two-count Information were filed for defendant's co-conspirator, Ralph Tillman, CR 18-0012-RGK, who admitted he was bribed by defendant starting in 2003 and not only knew defendant was defrauding the VA out of millions of dollars, but assisted defendant's fraud in a variety of ways. In return for the cash bribe payments (totaling approximately $286,000) and other things of value, Tillman would, among other things: (a) intentionally fail to scrutinize the annual Settlement Statements, despite knowing they contained false information; (b) fail to inform his superiors at the VA that Scott was not reporting accurate and truthful revenue and expenses to the VA; and (c) enter into a modification of and an extension (on May 25, 2011) of the Contract with WSS, and other agreements, in order to continue the fraud and bribery scheme. (Tillman Plea Agreement, p.14.) On February 26, 2018, Tillman pled guilty to false statements to federal agents in violation of 18 U.S.C. § 1001 and subscribing to a false tax return (for his failure to report bribery income) in violation of 26 U.S.C. § 7206(1). Tillman's sentencing is set for August 27, 2018.

**III. OBJECTION TO THE PRESENTENCE REPORT**

The government objects to the guidelines calculation in the PSR, ¶¶ 29-31, the Guideline Summary, and to ¶¶ 15, 26, 65-67, 79 and 84.

More particularly, the government objects to the guidelines calculation in the PSR, ¶¶ 29-31, and the Guideline Summary, which although technically correct, are not consistent with the USSG § 2B1.1 fraud guidelines calculations and 70-month sentence agreed upon in paragraph 22 of the plea agreement.  The government stands by its agreement to recommend a 70-month sentence in this case, but does so consistent with its ability under paragraph 33 of the plea agreement to "submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in" the Plea Agreement.

The last sentence of paragraph 15 contains a typographical error and is missing the word "and."  The sentence should read "Scott and Tillman entered into a modification of and an extension of the contract." (Emphasis added.)  The modification and the contract extension were two separate events that happened several years apart, thus the "and" is necessary to accurately portray the facts and demonstrate different official acts Tillman provided in exchange for bribes.  (See Plea Agreement ¶ 19.)

Paragraph 26 contains the incorrect amount for loss.  As agreed to by the parties in the plea agreement, loss to the VA is over $13 million while restitution is $12.6 million.  (See Plea Agreement Factual Basis, pg. 22.)

The government stands by its recommendation of 70 months' imprisonment, but notes it also objects to paragraphs 65 to 67 of the PSR regarding claims defendant has a substance abuse problem.  During its several years' long investigation, the government uncovered no evidence that defendant had a substance abuse problem.  While the

6

government did discover one OxyContin pill during its search of defendant's residence on November 8, 2017, it did not see other quantities during the search. Moreover, defendant's claims of non-medically supervised detoxification while at MDC appears dubiously aimed to achieve reduced prison time for participation in a residential drug treatment program when it may not actually be warranted. Notwithstanding the government's concerns and objection, it stands by its recommendation of 70 months' imprisonment.

Finally, the government objects to paragraphs 79 and 84 of the PSR in which the USPO stated defendant lacks the ability to pay the $10,000 fine agreed to in paragraph 22 of the plea agreement. The government believes defendant does have the ability to pay the fine. In any event, due to a title issue with the 1966 Corvette Stingray, the parties may be stipulating to sell the car at an independent auction house and apply the proceeds to the $10,000 fine and restitution. Any such agreement will be worked out prior to sentencing.

**IV. ARGUMENT**

Taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7), discussed below, the relevant sentencing guideline factors set forth in the binding plea agreement, and defendant's criminal history category of I, with zero criminal history, the government submits that the appropriate sentence in this case is 70 months.

    **A. A 70-Month Sentence is Reasonable Given The Nature and Circumstances of the Offense and the History and Characteristics of Defendant**

In determining a sufficient sentence, courts must consider the nature and circumstances of the offense and the history and

7

characteristics of defendant. 18 U.S.C. § 3553(a)(1). As agreed upon by the parties, an analysis of these factors warrants the sentence of 70 months' imprisonment.

With respect to the nature and circumstances of the offense here, the facts demonstrate defendant participated in reprehensible conduct warranting a lengthy custodial sentence. For almost fourteen years, defendant engaged in an elaborate scheme to defraud the VA and bribed the public official charged with overseeing his contract. Both aspects of defendant's crime were disgraceful. Defrauding a government agency out of funds that should have been used to support the care of our military veterans is particularly repugnant. Similarly, bribing a public official epitomizes one of the worst fears about our society and suggests that fortune favors the corrupt.

The history and characteristics of defendant show someone who came from a relatively stable family environment, especially when compared with many defendants in this district who are not as fortunate. Defendant is college educated and achieved a relatively high-level of success by becoming an independent business owner and amassed a fortune in homes, cars and bank accounts. Unfortunately, that success was largely the result of fraud.

In mitigation, defendant agreed to forfeit the long list of assets seized by the government, which appears to be almost everything he amassed in the fraud scheme, and admitted his guilt in an extremely detailed factual basis. Indeed, defendant's detailed factual basis serves as a cautionary tale and assists the government in deterring other government contractors and public officials from engaging in fraud and bribery schemes. Defendant's guilty plea and forfeiture also avoids the unnecessary expenditure of government

8

resources on lengthy criminal and forfeiture trials, thus allowing precious government resources to be devoted to investigation of other public corruption in the Central District of California.

### B. A 70-Month Sentence is Reasonable Because It Reflects the Seriousness of the Offense and Satisfies the Goals of 18 U.S.C. S 3553(A)(2)

In accordance with 18 U.S.C. § 3553(a)(2), the Court is to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of defendant, and to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. For the reasons previously stated, and because defendant was a government contractor who sets an example for so many other government contractors, the government respectfully submits that a 70-month sentence (1) will appropriately reflect the seriousness of the offense and promote respect for the law; (2) will deter future criminal conduct from both the defendant and others without being greater punishment than necessary; and (3) will serve to protect the community.

### C. The Remaining Section 3553(A) Factors Also Support The Sentence Requested By The Parties

Section 3553(a)(3) requires the Court to consider the kinds of sentences available. Given the nature of defendant's offense as a government contractor who defrauded the government and paid bribes, any sentence that does not involve some significant period in custody would not be appropriate here. In addition, defendant's crimes fall within Zone D of the Sentencing Table, and non-custodial sentences

9

are discouraged for such offenses.  See U.S.S.G. § 5C1.1(f); Application Note 2 to U.S.S.G. § 5B1.1; PSR ¶ 91.  Furthermore, the public interest in satisfying the other Section 3553(a) factors of obtaining a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public from further crimes of defendant, and avoids unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct outweighs any interest in having defendant avoid time in custody.

## V.   CONCLUSION

For the above reasons, 70 months' imprisonment, three years' supervised release, a $200 special assessment, restitution of $12,619,693 for the remaining loss to the VA, and a fine of $10,000 is a sufficient, but not greater than necessary, sentence in this case and should be imposed in the Court's discretion.